## Auction Procedures for Sale of Better Bedding's Assets

The following procedures (the "Auction Procedures") shall govern the auction process under which the assets subject to that certain Asset Purchase Agreement by and between Sleepy's, LLC and Better Bedding Shops, Inc. ("the Debtor") (the "Assets") and shall be offered for sale to the Qualified Bidder (as hereinafter defined) making the highest and best Qualified Bid (the "Winning Bid"). These Auction Procedures have been approved and authorized by order dated April ___, 2010 (the "Sale Procedures Order") of the Bankruptcy Court.

Business Judgment of the Debtor. The Debtor reserves the right in its reasonable discretion (a) to send copies of these Auction Procedures together with any other information to any potential interested party; (b) to determine whether to permit any person to engage in due diligence with respect to the Debtor; (c) to determine which Bidders are Qualified Bidders; (d) to determine whether the amendments and changes contained in each Competing Agreement (as hereinafter defined) are acceptable as terms and conditions to sell; (e) to determine which Qualified Bid, if any, is the highest and best offer; or (f) to reject at any time prior to entry of an order of the Bankruptcy Court approving the sale to the maker of the Winning Bid, any bid which the Debtor deem to be (i) inadequate or insufficient, or (ii) not in conformity with the requirements of the Bankruptcy Code or the Auction Procedures.

(A)     Asset Sale. The Debtor is offering for sale the Assets. In furtherance of the sale of the Assets, the Debtor, as seller, and Sleepy's, LLC, as buyer (the "Stalking Horse Buyer" or "Buyer"), have entered into an Asset Purchase Agreement dated March 24, 2010 (the "Purchaser's Agreement"), providing for the sale of the Assets (less defined Excluded Assets) to the Stalking Horse Buyer. The Purchaser's Agreement is subject to higher and better bids under these Auction Procedures and approval by the Bankruptcy Court pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"), and certain other closing conditions.

(i)     The Stalking Horse Buyer is hereby deemed a Qualified Bidder that has satisfied all requirements to be a Qualified Bidder who has submitted a

Qualified Bid, as set forth herein and is able to participate at the Auction without any further action or qualification.

(B)     Due Diligence Materials.

(i)     From the Debtor.  Only Bidders (as defined herein) that comply with the following requirements are eligible to receive due diligence access or additional non-public information from the Debtor.  A Bidder shall be provided with reasonable access to all relevant business and financial information necessary to enable such person(s) to evaluate the Assets for the purpose of submitting a bid for the Assets and be afforded the opportunity to inspect the Assets.  If a Bidder that has satisfied the following requirements does not constitute a Qualified Bidder (as defined herein), then such Bidder's right to receive due diligence access or additional non-public information shall terminate. The Debtor shall not be obligated to furnish any due diligence information or entertain any offers from persons who are not Qualified Bidders after the Initial Bid Deadline (as hereinafter defined).  Bidders shall be required to:

(a)     Provide requested information, including certified financial statements and other financial information, reasonably acceptable to the Debtor demonstrating that such Bidder has the ability to consummate the contemplated transaction.

(b)     Sign a confidentiality agreement with regard to the Debtor's confidential financial information.

(ii)    From Bidders.  Each Bidder or Qualified Bidder shall comply with all reasonable requests for additional information and due diligence access by the Debtor regarding such Bidder or Qualified Bidder and its contemplated transaction.  Failure by a Bidder to comply with requests for additional information and due diligence access will be a basis for the Debtor to determine that the Bidder is not a Qualified Bidder.  Failure by a Bidder to comply with requests for additional information and due diligence access will be a basis for the Debtor to determine that a bid made by a Qualified Bidder is not a Winning Bid (as defined below).  By participating in the Auction, all Bidders are deemed to acknowledge that they have had sufficient and reasonable access to the Debtor's books, records, and executives for the purposes of conducting due diligence and having the opportunity to conduct such due diligence.

(iii)   **DEBTOR'S COUNSEL HAS NOT PREPARED ANY OF THE INFORMATION REGARDING THE DEBTOR, OR ANY OF THEIR OPERATIONS, ASSETS OR FINANCIAL CONDITION TO BE PROVIDED TO A BIDDER IN CONNECTION WITH THE PROCEDURES SET FORTH HEREIN.  CONSEQUENTLY, NO REPRESENTATION IS MADE BY THE DEBTOR'S COUNSEL REGARDING THE ACCURACY, RELIABILITY, VERACITY,**

**ADEQUACY, OR COMPLETENESS OF ANY INFORMATION PROVIDED IN CONNECTION WITH THE BIDDING PROCEDURES, AND ALL BIDDERS ARE ENCOURAGED TO CONSULT WITH THEIR OWN ADVISORS REGARDING ANY SUCH INFORMATION.**

(C)     <u>Submitting a Bid for the Assets</u>.  Any party other than the Buyer that is interested in being a participant in the Auction (as defined below) and acquiring the Assets (each a "Bidder"), must submit a "Qualified Bid" in conformance with the subparagraphs below on or prior to April 20, 2010 at 9:00 am, prevailing Eastern time (the "Initial Bid Deadline").

(i)     To be a Qualified Bid, the submission by a Bidder must contain a signed definitive asset purchase agreement for the Assets (a "Competing Agreement"), together with a copy of the signed version of the Competing Agreement that is marked in red-line to show changes from the Purchaser's Agreement.  Modifications or amendments to the Agreement that are contained in the Competing Agreement that are not "red lined" shall not be enforceable against the Debtor in the event the Competing Agreement is approved as the Winning Bid.  The Competing Agreement must satisfy, at a minimum, the following requirements:

(a)     It must have similar or better terms and conditions as the Purchaser's Agreement, with higher or better consideration accounting for the Minimum Overbid Increment (as defined below) and having an aggregate value to the Debtor's estate of not less than $980,000 plus the Assumed Liabilities as set forth in the Purchaser's Agreement and assumption of the Leases set forth on the Purchaser's Agreement (or compensation to the Debtor equivalent to the loss to the Debtor by virtue of any leases not assumed in the Competing Agreement) (the "Minimum Consideration").

(b)     Provide that the Bidder will forfeit its Deposit (as defined herein) as liquidated damages if such Bidder defaults under its Competing Agreement;

(c)     Not be subject to any: (1) financing contingency; (2) contingency relating to the completion of unperformed due diligence;(3) contingency relating to the approval of the Bidder's board of directors or other internal approvals or consents (for newly formed entities, written evidence of the approval of the contemplated transaction by the equity holders of such Bidder must be provided); or (4) any conditions precedent to the Bidder's obligation to purchase the Assets other than those included in its Competing Agreement;

(d)     No Competing Agreement shall provide for the payment to the Bidder of any breakup fee, topping fee, expense reimbursement or other similar arrangement;

(e)     All Competing Agreements shall have a value to the Debtor's estate having a value equal to or greater than the Minimum Consideration; provided that the Competing Agreement may not provide for the assumption of liabilities that are not allowed secured claims or allowed administrative claims or priority claims under Code sections 503 or 507 and may not provide for such assumption without the written consent of the affected creditor;

(f)     All Competing Agreements must be for all or substantially all of the Assets and must identify each Contract or Lease required to be assigned; and

(g)     The Bidder must consent to the core jurisdiction of the Bankruptcy Court and waive any right to a jury trial in connection with any disputes relating to the Auction or the Competing Agreement.

(h)     The Competing Agreement must not be conditioned on the ability of the Bidder to obtain financing, the outcome of unperformed due diligence by the Bidder, or any other contingencies (including any working capital adjustments); provided, however, that a bid may be subject to the confirmation of the accuracy and completeness of the specified representations and warranties in all material respects at the closing of the Asset Sale or the satisfaction of specified conditions in all material respects at the closing of the Asset Sale. None of such conditions shall be materially more burdensome or unfavorable to the Debtor than those set forth in the Purchaser's Agreement (except that a condition with respect to satisfaction of Hart-Scott-Rodino compliance may be included if the bid is accompanied by the draft submissions of the Bidder relating to the approval of the Bidder's purchase of the Assets by the Federal Trade Commission). Notwithstanding anything herein, the Competing Agreement must provide for the closing of the Asset Sale on a date no later than the date set forth in the Purchaser's Agreement subject to satisfaction of all conditions to closing.

(ii)     Any such Competing Agreement shall be accompanied by a deposit (the "Deposit") in the form of a certified check or wire transfer or other suitable form of security in the amount of at least 20% of cash component of Qualifying bid, payable to the order of the Debtor, and such Deposit shall be held in escrow in the trust account of the Debtor's counsel or suitable escrow agent pending the closing of the asset sale. The bidder shall forfeit the Deposit if (i) the bidder is determined to be a Qualified Bidder and withdraws its bid before the Bankruptcy Court approves the

Debtor' selection of the Winning Bid, and/or (ii) the Bidder is determined to have made the Winning Bid and withdraws or breaches the Competing Agreement without the Debtor's consent before the consummation of the sale. The Deposit shall be returned to the Bidder (i) if the Bidder is determined not to be a Qualified Bidder or (ii) under the circumstances contemplated by Sections (K) and (L) hereof. Each Deposit received by the Debtor shall be maintained in an interest-bearing account by the Debtor's counsel and be subject to the jurisdiction of the Court;

(iii) The Competing Agreement must be accompanied by a letter signed by the Bidder affirmatively (i) setting forth the identity of the Bidder, the contact information for the Bidder, and full disclosure of any affiliates or insiders of the Debtor involved in the bid, and identifying persons with full authority to bind the Bidder at the Auction; (ii) stating that the Bidder offers to purchase the Assets upon the terms and conditions set forth in the Competing Agreement, (iii) representing that the Qualifying Bidder is prepared immediately to initiate all actions necessary to obtain all other applicable regulatory approvals for the qualifying bid and provide its best estimate of the time within which such approvals will be obtained; (iv) summarizing the proposed consideration the Bidder proposes to pay under the Competing Agreement, (v) stating the portion of consideration to be paid in cash and the portion to be paid in any other form of value and providing such information as to permit the Debtor accurately to assess the value of such non-cash consideration (which statement of value shall not be binding on the Debtor or the Bankruptcy Court), (vi) confirming that the offer to purchase set forth in the Competing Agreement cannot be withdrawn by the Bidder prior to and may be accepted by the Debtor for a period terminating at 11:59 p.m. of the day on which approval by the Bankruptcy Court of the Winning Bid and entry of the Sale Order occurs;

(iv) To the extent not previously provided to the Debtor, include an executed confidentiality agreement (in form and substance reasonably satisfactory to the Debtor);

(v) To the extent not previously provided to the Debtor, be accompanied by evidence satisfactory to the Debtor, in its commercially reasonable discretion, that the Bidder is willing, authorized, capable and qualified financially, legally and otherwise, of unconditionally performing all obligations under its agreement in the event that it submits the Winning Bid (as hereinafter defined) at the Auction, including, but not limited to, providing the following information:

(a) The Bidder's current financial statements, audited if available;

(b) Contact names and numbers for verification of financing sources;

(c) Evidence of the Bidder's internal resources and proof of any debt or equity funding commitments that are needed to close the contemplated transaction; and

(d) Any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtor demonstrating that such Bidder has the ability to close the contemplated transaction.

(vi) To the extent not previously provided to the Debtor, be accompanied by evidence establishing the Bidder's ability to provide adequate assurance of future performance for Contracts and Leases to be assigned to the Bidder, which evidence shall be in a form suitable for the Debtor to provide upon request to the non-debtor parties to the Contracts and Leases to be assigned; and

(vii) Be submitted to:

(a) the Debtor:  Better Beddings Shops, Inc., 265 Prestige Park Road, East Hartford, Connecticut, 06108, Attn:  Thomas J. Wholley, President

(b) Counsel for the Debtor:  Barry S. Feigenbaum Esq., Rogin Nassau LLC, 185 Asylum Street, 22nd Floor,  Hartford, CT 06103-34609; and,

(c) The Buyer: Sleepy's, LLC, 1000 South Oyster Bay Road, Hicksville, NY 11801, Attn: Adam Blank, COO and General Counsel.

(d) Counsel for the Buyer: Duane Morris LLP, 1540 Broadway, New York, NY 10036-4086, Attn: James J. Vincequerra, Esq.

(e) The official committee appointed in the Debtor's Bankruptcy Case.

(f) Counsel for the Committee: Cliff A. Katz, Platzer, Swergold, Karlin, Levine, Goldberg, & Jaslow, LLP, 1065 Avenue of the Americas, New York, NY, 10018.

in each case so as to be received not later than the Bid Deadline.

(D) <u>Auction</u>.  In the event the Debtor timely receive a conforming Competing Agreement (a "Qualified Bid") from a Bidder determined by the Debtor to be willing, authorized, capable and qualified financially, legally and otherwise of unconditionally performing all obligations under its Competing Agreement (a "Qualified Bidder"), then the Debtor will conduct an auction (the "Auction") for the Assets at Rogin Nassau LLC, 185 Asylum Street, 22nd Floor, Hartford, CT 06103-34609, Connecticut 06103 on April 21, 2010 at 10:00 a.m., or another time and location as noticed to Qualified Bidders.  The Auction shall be

conducted openly and the United States Trustee, and all, and only, Qualified Bidders and their professionals and representatives will be permitted to attend and participate in the Auction. The Auction will be transcribed or videotaped. Immediately prior to the Auction, each Qualified Bidder shall confirm that it has not engaged in any collusion with respect to the bidding or the sale.

(i)     If no conforming Competing Agreement from a Qualified Bidder shall have been received at or prior to the Initial Bid Deadline, the Auction will not be held and this Court's hearing held to approve the highest or best offer for the Assets (the "Sale Hearing") will proceed with respect to the Buyer. The Buyer is deemed a Qualified Bidder with all the rights granted herein to Qualified Bidders. In the event there is no Auction, the Purchaser's Agreement shall be deemed to be the Winning Bid.

(ii)    The Debtor and their professionals shall direct and preside over the Auction.

(iii)   Prior to commencing the Auction for the Assets, the Debtor, shall select the terms of a opening bid for sale of the Assets and describe such opening bid to the Bidders. The determination of which Qualified Bid constitutes the opening bid shall take into account any factors the Debtor reasonably deem relevant to the value of each Qualified Bid to the estates, including, *inter alia,* the following: (A) the amount and nature of the consideration; (B) the ability of the Qualified Bidder to close the proposed transaction; (C) the proposed closing date and the likelihood, extent and impact of any potential delays in closing; (D) any purchase price adjustments; (E) the impact of the contemplated transaction on any actual or potential litigation; (F) the net economic effect of any changes from the Purchaser's Agreement, if any, contemplated by any Competing Agreement, and (H) the net after-tax consideration to be received by the Debtor's estates.

(iv)    All bids made at the Auction shall be made and received on an open basis, and all material terms of each subsequent bid shall be fully disclosed to all other Qualified Bidders. The Debtor shall maintain a transcript of all bids made and announced at the Auction, including the opening bid, all subsequent bids, and the Winning Bid (as defined below).

(v)     At the Auction, for bids on the Assets, Qualified Bidders may submit successive overbids, each of which must itself constitute a Qualified Bid, as follows:

(a)     Subsequent bids shall be in increments as determined by the Debtor, but not less than $10,000, and such incremental consideration for each overbid must be in cash; and

(b)     Subsequent bids must identify specifically any changes to such Bidder's prior Qualified Bid.

(vi)    The Debtor may make one or more adjournments in the Auction to, among other things: facilitate discussions between the Debtor and individual Qualified Bidders; allow individual Qualified Bidders to consider how they wish to proceed; and give Qualified Bidders the opportunity to provide the Debtor with such additional evidence as the Debtor in its reasonable business judgment may require, that the Qualified Bidder has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed transaction at the current high bid amount.  Prior to or at the Auction, the Debtor may disclose the contents of a Qualified Bid received by the Initial Bid Deadline to all Qualified Bidders, along with the Debtor's determination as to the value of such bid and the discount, if any, that they are applying to such bid as a result of changes to the Agreement or otherwise, to assist Qualified Bidders in (a) answering any questions and (b) preparing an increased bid.

(vii)    The Debtor may adopt additional rules for the Auction at or prior to the Auction that, in its reasonable discretion, will better promote the goals of the Auction and that are not inconsistent with any of the provisions of this Order.  All such rules will provide that all bids shall be made and received in one room, on an open basis, and all other Qualified Bidders shall be entitled to be present for all bidding with the understanding that the true identity of each Qualified Bidder (i.e., the principals submitting the bid) shall be fully disclosed to all other Qualified Bidders and that all material terms of each Qualified Bid will be fully disclosed to all other Qualified Bidders throughout the entire Auction.

(viii)    Upon conclusion of the bidding, the Auction shall be closed, and the Debtor, shall (i) immediately review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the closing, and (ii) immediately identify the Winning Bids.  Bids made after the close of the Auction shall not be considered by the Debtor.

(ix)    The Qualified Bidders submitting the Winning Bids shall be required to amend and deliver to the Debtor before leaving the Auction, if possible, but at least within 12 hours of the conclusion of the Auction executed originals of their respective asset purchase agreements reflecting the terms of its final bid made at the Auction.

(E)    <u>Preliminary Status of Winning Bid</u>.  The Debtor shall sell the Assets to the applicable Winning Bidder upon the approval and entry of the Sale Order by the Bankruptcy Court after the Sale Hearing in accordance with the terms of the Winning Bids and the Sale Order.  The Debtor's presentation of one or more particular Qualified Bids to the Bankruptcy Court for approval does not constitute the Debtors' acceptance of such bid.  The Debtor will be deemed to have accepted such bid only when the bid has been approved by the Bankruptcy Court at the Sale Hearing and has been executed by the Debtor.

(F)     Sale "As Is," "Where Is".  The sale of Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtor, their agents or their estates except to the extent set forth in the applicable purchase agreement for the Assets.  Each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer; that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in these procedures.

(G)     Sale Free and Clear.  Subject to any Sale Order approving the sale of the Assets and except as otherwise provided in any agreement to acquire the Assets, all of Debtor's right, title and interest in and to the Assets shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon and there against (collectively, the "Interests") in accordance with section 363 of the Bankruptcy Code, with such Interests to attach to the net proceeds of the sale of the Assets.

(H)     Sale Hearing.  The Sale Hearing shall be conducted in the Bankruptcy Court in Hartford Connecticut by the Bankruptcy Court at 10:00 a.m. on April 22, 2010 or on such later date as the Bankruptcy Court announces in open Court.  If the Debtor does not receive any Qualified Bids for the Assets (other than the Qualified Bid of the Stalking Horse Buyer), the Debtor will report the same to the Bankruptcy Court at the Sale Hearing and will proceed with a sale of the Assets described in the Purchaser's Agreement to the Stalking Horse Buyer following entry of the Sale Order.

(I)     Buyer is hereby deemed a Qualified Bidder that has satisfied all requirements to be a Qualified Bidder who has submitted a Qualified Bid, as set forth herein and is able to participate at the Auction and is entitled to all of the rights granted herein to the Qualified Bidders.

(J)     The Stalking Horse Buyer's Deposit shall be returned to the Stalking Horse Buyer, if ever, pursuant to the terms of the Purchaser's Agreement and the Auction Procedures. In any event, the Stalking Horse Buyer's Deposit shall be returned by no later than the fifth (5th) Business Day following the conclusion of the Auction if the Stalking Horse Buyer is not the Winning Bidder.

(K)     Return of Deposits.  Deposits, with any accrued interest, of the Court approved and accepted Winning Bid shall be applied to the purchase price of such transaction at closing. Deposits, with any accrued interest, of all other Bidders shall be held in an interest-bearing escrow account, and thereafter immediately returned to the respective Bidders.  The bidder shall forfeit the Deposit if (i) the bidder is determined to be a Qualified Bidder and withdraws its bid or any subsequent increased bid before the Bankruptcy Court approves the Debtor' selection of the Winning Bid, and/or (ii) the bidder is determined to have made the Winning Bid and withdraws or breaches the Competing Agreement without the Debtor' consent before the consummation of the sale.  The Deposit shall be returned to the bidder (i) if the bidder is

determined not to be a Qualified Bidder or (ii) the Debtor cancel the proposed sale of the Assets or withdraw the Sale Motion.  Each Deposit received by the Debtor's counsel shall be maintained in an interest-bearing account and be subject to the jurisdiction of the Court.

(L)    <u>Bid Procedure Modifications</u>.  These procedures may not be modified except with the express written consent of the Debtor and the Stalking Horse Buyer, and pursuant to an Order of this Court.  The Debtor may (a) determine, which Qualified Bid, if any, is the highest or best; and (b) reject at any time before entry of an Order of the Bankruptcy Court approving a Qualified Bid, any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, these procedures, or the terms and conditions of sale, or (iii) contrary to the best interests of the Debtor, their estates and creditors.  At or before the Sale Hearing, the Debtor may impose such other terms and conditions as the Debtor determine to be in the best interests of the Debtor's estate, its creditors and other parties in interest.